IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITY OF SANDY SPRINGS,<br>a political subdivision of the<br>State of Georgia<br>7840 Roswell Road, Building 500<br>Sandy Springs, GA 30350<br><br>Plaintiff,<br><br>v.<br><br>Eric Holder,<br>Attorney General of the<br>United States of America;<br>THOMAS E. PEREZ,<br>Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice<br>950 Pennsylvania Ave, NW<br>Washington, DC, 20530<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Three Judge Court Requested<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY RELIEF UNDER THE VOTING RIGHTS ACT

### I.    Introduction

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"), also known as the "bailout" provision.

### II.    The Parties

2. Plaintiff Sandy Springs ("the City") is a political subdivision of the State of Georgia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act. 42 U.S.C. §l973b(a)(1).

3. Defendant Eric Holder is sued in his capacity as the Attorney General of the United States. The Attorney General heads the Department of Justice, which is the department in the executive branch of the United States that enforces the Voting Rights Act generally, and Section 5 of the Voting Rights Act in particular.

1

4. Defendant Thomas Perez is sued in his capacity as an Assistant Attorney General. As Assistant Attorney General, Defendant Perez heads the Civil Rights Division of the Department of Justice, which is the unit within the Department of Justice charged with responsibility for most Voting Rights Act matters.

### III.   Jurisdiction

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

### IV.   Background

6. The City was created in 2005 by an Act of the Georgia Legislature.

7. The creation of the City was reviewed by the Attorney General and no objection was interposed to the implementation of the legislation pursuant to Act No. 34 (H.B. 37) (2005 Session).

8. The City is located entirely within Fulton County, Georgia and occupies land north of the City of Atlanta. The City was incorporated by the State of Georgia in 2005.

9. The City has a manager/council form of government. The City Council is the policy making and legislative body of City government and includes a Mayor and five council members. The Mayor is elected at-large and the remaining five council members are elected from single-member districts.

10. Aside from the City government, there are no other elected governmental units that exist completely within the City within the meaning of 42 U.S.C. §l973b(a)(1).

11. The City is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §l973c. Under Section 5, the City is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures since the Act's November 1, 1964 coverage date for Georgia.

12. Fulton County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Georgia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in Georgia voted in the 1964 presidential election. 42 U.S.C. §1973b(b).

13. Since its inception in 1965, the Voting Rights Act has allowed States and certain other covered jurisdictions, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions if they can satisfy

standards established in the Voting Rights Act. This exemption process is known as "bailout."

14. In 2009, the Supreme Court made clear that the "bailout" provision is applicable to all covered jurisdictions – not just those jurisdictions that register voters. See *Northwest Austin Municipal Utility District Number One v. Holder*, 129 S.Ct. 2504 (2009).

15. In 1982, Congress made changes in the exemption standards of the Voting Rights Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

   A) No test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

   B) No final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;

   C) No Federal examiners have been assigned to the political subdivision;

   D) All governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. §l973c;

   and

   E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

   A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;

   B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and

C) Expanded opportunities for convenient registration and voting exist within the State or political subdivision.

## V.    Claim for Relief

16. As a political subdivision of the State of Georgia, the City has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c.

17. In the ten years preceding the filing of this action, the State of Georgia filed a preclearance submission to implement the legislation creating the City, and the City of Fulton County submitted a preclearance submission to align precincts with the City's boundaries pursuant to Section 5 of the Voting Rights Act, 42 U.S,C. §1973c.  Both changes received administrative preclearance.

18. Within the ten years preceding the filing of this action, Fulton County has submitted numerous Section 5 preclearance actions to the Department of Justice, and the Attorney General has never interposed a Section 5 objection to any change affecting voting in Fulton County or the area that is now Sandy Springs.

19. Sandy Springs has not filed any separate Section 5 preclearance actions, but has not been required to do so based on actions taken to date by the City Council.

20. Neither the City nor Fulton County have ever sought judicial preclearance of any voting changes in this County or City.

21. Voter registration opportunities in the City are readily and equally available to all citizens.

22. Minority voters participate in all aspects of the political process in the City.

23. No person in the City has been denied the right to vote on account of race, color, or membership in a language minority group for at least the preceding ten years.

24. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §l973b(e)) has been used in the City as a prerequisite to either registering or voting for at least the preceding ten years.

25. No final judgment of any court of the United States has determined that denials or abridgments of the right to vote on account of race or color have occurred in the City, nor has the City entered into any consent decree, settlement or agreement resulting in any abandonment of a voting practice challenged on such grounds.

26. No voting practices or procedures have been abandoned by the City or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color.

27. The City has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the City.

28. Minority voters in the City are not being denied an equal opportunity to elect candidates of their choice to any office in the City.

29. Federal examiners have never been appointed or assigned to the City under Section 3 of the Voting Rights Act, 42 USC. §l973a.

30. Because there has not been any known intimidation or harassment of persons exercising rights protected under the Voting Rights Act in the City within the last ten years, the City has not had any occasion to take any action eliminating such activity.

31. Pursuant to 42 U.S.C. §l973b, the City has publicized the intended commencement of this action in the media serving the City and at appropriate United States Post Offices.

32. The proposed bailout was the subject of a public hearing at the City Council in March of 2010, and no objection was heard.

33. The City Council unanimously voted to proceed with the bailout.

34. The allegations set forth above, if established, entitle City to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §l973b, exempting the City and all governmental units within the City from the special remedial provisions of the Voting Rights Act.

WHEREFORE, plaintiff City of Sandy Springs respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiffs complaint;

B. Enter a declaratory judgment that plaintiff City of Sandy Springs is entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

Respectfully submitted,

For the Plaintiff
CITY OF SANDY SPRINGS:

JASON TORCHINSKY
Holtzman Vogel PLLC
45 North Hill Drive, Suite 100
Warrenton, VA 20186
(540) 341-8808
DC Bar No. 976033
Email: jtorchinsky@holtzmanlaw.net

Douglas Chalmers, Jr., Pro Hac Vice
FSB FisherBroyles, a Limited Liability Partnership
340 Old York Road
Johns Creek, GA 30097
770-630-5927
Email: chalmers@fsblegal.com

## Certificate of Service

I hereby certify that on September 7, 2010, copies of the foregoing complaint was served by U.S. mail on the following parties:

Attorney General Eric H. Holder, Jr.
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530

And

Assistant Attorney General Thomas Perez
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530

And

U.S. Attorney for the District of Columbia
501 Third Street, NW
Washington, DC 20001

/s/ Jason Torchinsky
JASON TORCHINSKY